# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLISTER GEORGE,<br>Petitioner,<br>v.<br>KEN CLARK, Warden,<br>Respondent. | 1:09-cv-00535 AWI JMD (HC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

Hollister George (hereinafter "Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1990 conviction for second-degree murder. The trial court sentenced Petitioner to a term of fifteen years to life in prison.

In the instant action Petitioner challenges the denial of his parole by the California Board of Parole Hearings (the "Board"). Petitioner contends that the Board violated his constitutional rights by denying him parole.

Petitioner filed a petition for writ of habeas corpus challenging the Board's decision with the Riverside County Superior Court. The court denied the petition on August 15, 2008.

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. Both courts summarily denied the petitions.

Petitioner filed the instant petition for writ of habeas corpus on March 20, 2009. Respondent filed an answer on September 9, 2009, and Petitioner filed a traverse on October 7, 2009.

## FACTUAL BACKGROUND

### I. The Commitment Offense[1]

On November 29, 1989, Petitioner, age seventeen, and three friends, one of whom was Tommy Armendariz, age twenty-eight, ("victim"), were in an area known for drug sales. Officer Garcia approached them and called for back-up when he observed a sawed off shotgun in the vehicle. The victim assaulted Officer Garcia and they both rolled down an embankment. As they wrestled, the victim tried to pull Officer Garcia's gun from its holster and Officer Garcia tried to stop him. The victim yelled at Petitioner to "shoot the pig" and Officer Garcia observed Petitioner holding the shotgun. The victim continued to yell at Petitioner to shoot. Officer Garcia looked back at Petitioner and saw a flash and heard the discharge of the weapon. Officer Garcia gained control of his weapon and shot the victim three times; the victim died on the spot. Just then, back-up officers arrived and arrested Petitioner for attempted murder. Petitioner was found to have been under the influence of methamphetamine and phencyclidine (PCP) at the time. It was later found that the gun and the vehicle were both owned by the victim.

### II. Pre-Conviction Facts[2]

Petitioner started using alcohol and marijuana in middle school. He has been in some sort of state custody since he was 13 years old. On August 27, 1985, Petitioner was convicted of burglary and declared a ward of the court. Petitioner spent 15 to 60 days in juvenile hall and was then placed in a private facility. On July 23, 1986, Petitioner was convicted of "failure to adjust" and was placed in Boys' Republic. Petitioner was released to his parents on May 22, 1987. On December 11, 1987, Petitioner was found to be under the influence of a controlled substance, in violation of a court order. He was released to the custody of his parents after completing 6 to 120 days in juvenile hall. On May 6, 1988, Petitioner was again found to be under the influence of a controlled substance and was

---

[1] The facts of the commitment offense are derived from the transcript of the Board of Parole's hearing on February 28, 2008. (Resp't's Answer Ex. A, Tr. Board of Parole Hr'gs (hereinafter Tr.), 24-25, ECF No. 15.)

[2] (Tr. 33-39.)

placed in a private juvenile facility. Petitioner also got into trouble for being on a school campus when he should not have been and was again placed in a private juvenile facility.

**III. Post-Conviction Facts**[3]

While incarcerated, Petitioner has not received a single 115 (serious rule violation), but has received six negative 128s (minor counseling write ups), the last of which was for arriving late to work on January 13, 2006. There is no record of Petitioner using drugs or alcohol in prison.

Petitioner received his GED in 1993 and has completed eight courses from Coastline Community College.

Petitioner has participated in self-help programs, including: Alcoholics Anonymous, Narcotics Anonymous, and Mallati Islami (an Islamic twelve-step substance abuse program). Petitioner has not participated in a substance abuse program since 2006 because the facility in which he resided at the time of the hearing did not have Mallati Islami. Petitioner has also participated in Basic Alternatives to Violence and Anger Management, and has taken courses in Islamic studies and in voluntary tutoring. Petitioner regularly volunteers at the Facility "B" Literacy Program and the Inmate Youth Offender Program. Petitioner has also served on the Men's Advisory Council (MAC).

Petitioner is certified as a welder and a sewing machine operator upholsterer through the Prison Industry Authority. Petitioner is also certified as a customer service specialist though the Electronics Technicians Association, International. Additionally, Petitioner worked in the Prison Industry Authority Chair Facility from 2001 through 2005.

Petitioner's post-conviction progress reports have given him a classification score of 19, which is the most desirable classification score an inmate with a life sentence can ever receive.

**IV. Post-Commitment Plans**[4]

If released, Petitioner plans to either live with his sister in Paris, California where his brother-in-law has offered him employment, or live with his mother in Riverside, California.

The Board could not accept letters of support from Petitioner's sister and brother-in-law

---

[3](Tr. 41-48.)

[4](Tr. 18-23, 49.)

because neither of them were signed or dated.

**V. Psychological Evaluation**[5]

Petitioner's most recent psychological report, written by Dr. Ohrling on March 25, 2005[6], is supportive of Petitioner's release with the recommendation that Petitioner continue to attend Alcoholics Anonymous and Narcotics Anonymous. The report notes that Petitioner has "no record of aggression or violence in prison," and says that

> [i]n a less controlled setting such as a return to the community, the inmate can be likely to hold present gains. With in a controlled setting it appears that this inmate's propensity for violence is less than that of the average inmate, and within the community it would also be less than the average citizen.

The report goes on to say that "[c]riminal-mindedness and criminality did not appear to be primary elements of [Petitioner's] offense" and that the offense did not appear to be premeditated.

The report observes that Petitioner is extensively remorseful and acknowledges the wrongfulness of his actions and is "highly motivated to undertake constructive changes in his life."

The report identifies Petitioner's drug history and alcohol abuse as high risk factors and holds that drugs and alcohol played a significant role in the commitment offense. The report notes that Petitioner participated in AA and NA from 1994 to 1995, in NA from 1997 to 2000 and again from 2001 to 2002, and in AA from 2002 to 2004. The report further notes that Petitioner was going to begin attending Mallati Islami the same week that the report was written.

**VI The Board's Decision**[7]

The Board held a hearing to determine Petitioner's parole suitability on February 28, 2008. Petitioner was present and testified at the hearing. The Board issued it's decision that same day.

The Board found Petitioner unsuitable for parole because he posed an unreasonable risk of danger to society or threat to public safety if released from prison. The decision was based primarily on the fact that Petitioner was under the influence of illegal drugs at the time of the offense but is not

---

[5](Tr., Psychological Assessment, March 25, 2005.)

[6]While the front page of the psychological assessment says March 25, 2004, the report was actually signed on March 25, 2005. (Tr. 15-16.)

[7](Tr. 78-92.)

currently in a substance abuse program and has not shown any commitment to attending a substance abuse program if released. The Board also stated concern that Petitioner does not consider himself to be an addict. The Board recommended that Petitioner continue with a substance abuse program in prison and make plans to have a sponsor and a program upon release. The Board further recommended that Petitioner obtain updated signed letters of support before his next parole hearing. The Board also requested an updated psychological evaluation, as the one it relied on in this instance was from 2005.

## DISCUSSION

### I. Jurisdiction

A person in custody pursuant to the judgment of a State court may petition the district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. Also, Petitioner is currently incarcerated at the California Substance Abuse Treatment Facility, which is located in Kings County. As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. See 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

### II. ADEPA Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2009 and is consequently governed by the provisions of the AEDPA. See Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Thus, the petition "may be

granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), *overruled in part on other grounds*, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, Hayward, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable

application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue . . . This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002).

## **III. Review of Petitioner's Claims**

Petitioner states two grounds for relief in the instant petition. First, Petitioner claims that the evidence in the record does not support the Board's decision to deny parole. Second, Petitioner claims that the superior court's decision to affirm the Board's denial violated his due process rights. While Petitioner claims two separate grounds for relief, both complaints are centered in due process. The federal habeas court has a single due process analysis of parole decisions, thus the Court examines both of Petitioner's claims as one for violation of due process.

The Court analyzes a due process claim in two steps. '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether

the procedures attendant upon that deprivation were constitutionally sufficient.'" Sass, 461 F.3d at 1127.

Respondent argues that Petitioner does not have a federally protected liberty interest in parole. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, the Ninth Circuit has recognized that "[i]f there is any right to be release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." Hayward, 603 F.3d at 555. The Ninth Circuit further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law creating an enforceable right to parole." Id. at 559. The Hayward court's finding that there exists no free standing federal due process right to parole, or the right to some evidence of current dangerousness, contained the consistent and continual caveat that state law may in fact give rise to federal protection for those rights. As later noted by the Ninth Circuit, "state-created rights may give rise to liberty interests that may be enforced as a matter of federal law." Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). The Pearson court found that, "Hayward necessarily held that compliance with state requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established. Id.

As noted by the Ninth Circuit in Hayward, the logical next question is whether California's parole scheme gives rise to a liberty interest enforced as a matter of federal law. The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." Pearson, 606 F.3d at 611 (citing Hayward, 603 F.3d at 562); see also Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state").

Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal due process is "whether the California

judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted). As the Ninth Circuit recently observed in Cooke:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole,"[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

Cooke, 606 F.3d at 1214 (quoting In re Lawrence, 44 Cal.4th 1181, 1210, 1213 (2008)); see also Cal. Code Regs., tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole). The California Supreme Court in Lawrence held that, "[t]he relevant determination for the Board and the Governor is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate." Id. at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability"). Thus, the dispositive inquiry before this Court is "'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke, 606 F.3d at 1214 (quoting In re Lawrence, 44 Cal.4th at 1221) (emphasis in original).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. Bailey v. Rae, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the Los Angeles County Superior Court held only that there was

"sufficient evidence to support the Parole Board's decision." (Answer Ex. B.) As California does not set forth a "sufficient evidence" standard and the court provided no further reasoning, this Court must conduct an independent review of the record to determine whether the Board's denial was objectively unreasonable. See Musladin v. Lamarque, 55 F.3d 830, 835 (9th Cir. 2009); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003) (quoting Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000)).

The Court finds that the Board's decision is not an unreasonable application of the California "some evidence" standard. See Hayward, 603 F.3d at 562-63 (holding that "courts in this circuit . . . need only decide whether the California judicial decision approving the governor's [or Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'"). The Board discussed at length the fact that Petitioner has a history of drug and alcohol abuse and that drug use played a large part in the commitment offense. The Board indicated that it was looking for some assurance that Petitioner had some sort of plan in place to keep him from reverting to drugs and alcohol upon being released from prison. The Board was most concerned by the fact that Petitioner had not been in contact with a substance abuse program or contacted a sponsor outside of prison. The Board's apprehension regarding Petitioner's substance abuse is supported by Petitioner's substance abuse history, the part Petitioner's substance abuse played in the commitment offense, and the fact that the favorable psychological assessment was contingent on Petitioner's continued participation in NA and AA.

Petitioner testified that he no longer attends AA or NA because he finds more support and motivation in the Islamic program because it is based in his religious beliefs. The Board cannot deny a prisoner parole based solely on the fact that he does not attend AA or NA for religious reasons. See Pirtle v. Cal. Bd.of Prison Terms, ___ F.3d ___, 2010 WL 2732888, at *6-7 (9th. Cir. 2010). Like Petitioner, Pirtle was denied parole in large part due to his history of substance abuse and the fact that he stopped attending AA. Id. Pirtle testified that he quit the program because he objected to AA's religious content and its emphasis on a higher power; however, he said he would attend a secular program if one was offered at the facility in which he was housed. Id. at 6. The Ninth

Circuit found that Pirtle's failure to attend AA for religious reasons was not probative of his current dangerousness because he was forthright with the Board about his alcohol abuse, he expressed a commitment to abstain from alcohol once out of prison, and he offered proof of that commitment by presenting the Board with a list of secular programs located in the area in which he planned to live upon release. Id. at 6-7.

The instant cause is distinguishable from Pirtle because Petitioner has not shown the same commitment to maintain a substance abuse free lifestyle outside of prison. Initially, Petitioner testified that he subscribes to the philosophy that once a person is an addict they can be fully cured, which infers that he might not view substance abuse treatment as a long term commitment. Furthermore, Petitioner has not done any research on Islamic substance abuse programs located in the areas in which he would like to live upon release. Petitioner testified that when he is released he "plans on contacting some programs because I believe that . . they can help me in some other aspects," (Tr. 56), but also admitted that he does not "know of any particular Islamic organizations in the Riverside area" (Tr. 52-53). Petitioner has not show the same level of commitment to maintaining a substance abuse free lifestyle as Pirtle; thus, it was appropriate for the Board to rely heavily on Petitioner's lack of substance abuse programming.

While the psychological assessment was favorable of Petitioner's release, this finding was predicated on Petitioner's continued participation in NA and AA. The assessment observed that Petitioner's history with substance abuse and the fact that substance abuse played a significant role in the commitment offense are high risk factors for relapse and reoffense. Petitioner's lackadaisical attitude towards participation in substance abuse programing and his failure to show any post-commitment plans evidences his substantial risk of relapsing into alcohol and drug abuse thereby putting him at a greater risk of reoffending. As Petitioner has not taken the necessary steps to mitigate the high risk factors for relapse and reoffense as set forth by the psychological assessment, it was not unreasonable for the Board to find that Petitioner continues to pose a current risk of danger to society.

**CONCLUSION**

For the foregoing reasons, Petitioner should not be granted habeas relief.

**RECOMMENDATION**

Accordingly, IT IS HEREBY RECOMMEND that:

1. The petition for writ of habeas corpus be DENIED and

2. The Clerk of Court be directed to enter judgement for Respondent.

This Findings and Recommendations is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: August 11, 2010** **/s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE